1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

IMPETUS ENTERPRISE, INC., et al.

Defendants.

Case No. 8:18-cv-01987-JLS-KES

**ORDER ON DEFAULT FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS BRIAN COLOMBANA, IMPETUS ENTERPRISE, INC., FIG TREE & CO., LLC, AND RELIEF DEFENDANT NOEL SOLUTIONS, LLC (DOCS. 124, 132)**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), filed its First Amended Complaint for Permanent Injunction and Other Equitable Relief, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101–6108 on April 3, 2019.  The Clerk

of Court entered default against Impetus Enterprise, Inc. ("Impetus"), Fig Tree & Co., LLC ("Fig Tree"), and Noel Solutions, LLC ("Noel") on May 17, 2019, and against Brian Colombana ("Defendant Colombana" or "Colombana") (collectively, "Defaulting Defendants") on November 7, 2019, for failure to plead or otherwise defend this action. The FTC timely filed applications for default judgment against Defaulting Defendants. Having considered these applications and for the reasons set forth in its prior orders, the Court hereby grants the FTC's applications for default judgment against Defaulting Defendants. Accordingly, **IT IS ORDERED**[1]:

**FINDINGS**

A.     This Court has jurisdiction over the subject matter and the parties, and venue is proper as to Defaulting Defendants.

B.     The First Amended Complaint states claims upon which relief may be granted pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Telemarketing Act, 15 U.S.C. §§ 6101–6108.

C.     The Defaulting Defendants' activities as alleged in the First Amended Complaint are in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

D.     The FTC properly served each of the Defaulting Defendants with the Complaint and First Amended Complaint as well as the corresponding summonses. (Docs. 30, 31, 32, 41, 73, 80, 85, 86.)

E.     The Defaulting Defendants failed to answer the FTC's Complaint or First Amended Complaint or failed to otherwise defend this action.

F.     Defendant Colombana knowingly and voluntarily chose not to defend this action and stipulated to entry of default and default judgment. (*See* Doc.

---

[1] The Court finds this matter appropriate for disposition without hearing, as the written submissions are sufficient to enter judgment. *See* Fed. R. Civ. P. 55(b)(2).

1   129-1 at 131.)

2   G.   The Clerk of Court entered default against Impetus, Fig Tree, and Noel on
3        May 17, 2019 (Doc. 98) and against Colombana on November 7, 2019 (Doc.
4        130).

5   H.   The FTC is entitled to default judgment as to Defaulting Defendants
6        pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.

7   I.   The allegations in the First Amended Complaint are taken as true against
8        Defaulting Defendants.  Those allegations establish that Impetus and Fig
9        Tree (collectively, "Corporate Defendants") formed a common enterprise.

10  J.   The allegations in the First Amended Complaint establish that Corporate
11       Defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by
12       deceptively marketing their student loan debt relief services.

13  K.   The allegations in the First Amended Complaint establish that Corporate
14       Defendants were engaged in telemarketing, as defined by the Telemarketing
15       Sales Rule ("TSR"), 16 C.F.R. § 310.2(dd), (ff), and (gg).

16  L.   The allegations in the First Amended Complaint establish that Corporate
17       Defendants were sellers or telemarketers of debt relief services, as defined
18       by the TSR, 16 C.F.R. § 310.2(o)

19  M.   The allegations in the First Amended Complaint establish that Corporate
20       Defendants violated the TSR, 16 C.F.R. § 310.4(a)(5)(i), by requesting or
21       receiving advance fees for their debt relief services.

22  N.   The allegations in the First Amended Complaint establish that Corporate
23       Defendants violated the TSR, 16 C.F.R. § 310.4(a)(2)(x), by making
24       material misrepresentations about their debt relief services.

25  O.   The allegations in the First Amended Complaint establish that Defendant
26       Colombana had authority to control and directly participated in the
27       Corporate Defendants' practices and that he knew or should have known of

28

the Corporate Defendants' misrepresentations.

P.   The allegations in the First Amended Complaint establish that Noel ("Relief Defendant") received funds traceable to money obtained from Corporate Defendants' customers through their unlawful practices to which Relief Defendant has no legitimate claim and will be unjustly enriched if not required to disgorge those funds.  Relief Defendant holds those funds in constructive trust for the benefit of Corporate Defendants' customers.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.   "**Assisting Others**" includes:

1.   performing customer service functions, including receiving or responding to consumer complaints;

2.   formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3.   formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

4.   providing names of, or assisting in the generation of, potential customers;

5.   performing marketing, billing, or payment services of any kind; or

6.   acting or serving as an owner, officer, director, manager, or principal of any entity.

B.  "**Corporate Defendant(s)**" means Impetus Enterprise, Inc. ("Impetus") and Fig Tree & Co., LLC ("Fig Tree"), and their successors and assigns, individually, collectively, or in any combination.

C.  "**Defaulting Defendant(s)**" means Corporate Defendants, Defendant Colombana, and Relief Defendant, individually, collectively, or in any combination.

D.  "**Defendant Colombana**" or "**Individual Defendant**" means Brian Colombana, who has also done business as or under the fictitious business name "Futero."

E.  "**Financial Product or Service**" means any product, service, plan, or program represented, expressly or by implication, to:

   1.  provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit;

   2.  provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards;

   3.  improve, repair, or arrange to improve or repair, any consumer's credit record, credit history, or credit rating; or

   4.  provide advice or assistance to improve any consumer's credit record, credit history, or credit rating.

F.  "**Person**" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

G.  "**Receiver**" means Krista L. Freitag, whom this Court appointed as Receiver in this case on November 13, 2018.

H.  "**Relief Defendant**" means Noel Solutions, LLC and its successors and assigns.

I.  "**Secured or Unsecured Debt Relief Product or Service**" means:

   1.  with respect to any mortgage, loan, debt, or obligation between a

Person and one or more secured or unsecured creditors or debt
collectors, any product, service, plan, or program represented,
expressly or by implication, to:

a.     stop, prevent, or postpone any mortgage or deed of foreclosure
sale for a Person's dwelling, any other sale of collateral, any
repossession of a Person's dwelling or other collateral, or
otherwise save a Person's dwelling or other collateral from
foreclosure or repossession;

b.     negotiate, obtain, or arrange a modification, or renegotiate,
settle, or in any way alter any terms of the mortgage, loan, debt,
or obligation, including a reduction in the amount of interest,
principal balance, monthly payments, or fees owed by a Person
to a secured or unsecured creditor or debt collector;

c.     obtain any forbearance or modification in the timing of
payments from any secured or unsecured holder or servicer of
any mortgage, loan, debt, or obligation;

d.     negotiate, obtain, or arrange any extension of the period of time
within which a Person may (i) cure his or her default on the
mortgage, loan, debt, or obligation, (ii) reinstate his or her
mortgage, loan, debt, or obligation, (iii) redeem a dwelling or
other collateral, or (iv) exercise any right to reinstate the
mortgage, loan, debt, or obligation or redeem a dwelling or
other collateral;

e.     obtain any waiver of an acceleration clause or balloon payment
contained in any promissory note or contract secured by any
dwelling or other collateral; or

f.     negotiate, obtain, or arrange (i) a short sale of a dwelling or

6

other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage, loan, debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder.

The foregoing shall include any manner of claimed assistance, including auditing or examining a Person's application for the mortgage, loan, debt, or obligation.

2. With respect to any loan, debt, or obligation between a Person and one or more unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

   a. repay one or more unsecured loans, debts, or obligations; or

   b. combine unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

J. "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the TSR.

## ORDER

### I.  BAN ON TELEMARKETING

IT IS ORDERED that Corporate Defendants and Defendant Colombana are permanently restrained and enjoined from participating in or Assisting Others in Telemarketing, whether directly or through an intermediary.

### II.  BAN ON SECURED AND UNSECURED
### DEBT RELIEF PRODUCTS AND SERVICES

IT IS FURTHER ORDERED that Corporate Defendants and Defendant Colombana are permanently restrained and enjoined from advertising, marketing, promoting, offering for sale, or selling, or Assisting Others in the advertising,

marketing, promoting, offering for sale, or selling, of any Secured or Unsecured Debt Relief Product or Service.

## III.  PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO FINANCIAL PRODUCTS AND SERVICES

IT IS FURTHER ORDERED that Corporate Defendants and Defendant Colombana, their agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any Financial Product or Service, are permanently restrained and enjoined from misrepresenting, or Assisting Others in misrepresenting, expressly or by implication:

A.  the terms or rates that are available for any loan or other extension of credit, including:

   1.   closing costs or other fees;

   2.   the payment schedule, monthly payment amount(s), any balloon payment, or other payment terms;

   3.   the interest rate(s), percentage rate(s), or finance charge(s), and whether they are fixed or adjustable;

   4.   the loan amount, credit amount, draw amount, or outstanding balance; the loan term, draw period, or maturity; or any other term of credit;

   5.   the amount of funds to be disbursed to the borrower out of the proceeds, or the amount of funds to be disbursed on behalf of the borrower to any third parties;

   6.   whether any specified minimum payment amount covers both interest and principal, and whether the credit has or can result in negative amortization; or

   7.   that the credit does not have a prepayment penalty or whether

subsequent refinancing may trigger a prepayment penalty and/or other fees;

B.    the savings associated with the loan or other extension of credit;

C.    the ability to improve or otherwise affect a consumer's credit record, credit history, credit rating, or ability to obtain credit, including that a consumer's credit record, credit history, credit rating, or ability to obtain credit can be improved by permanently removing current, accurate negative information from the consumer's credit record or history;

D.    that a consumer will receive legal representation;

E.    its total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics; or

F.    any other fact material to consumers concerning any good or service.

## IV.  PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO ANY PRODUCTS OR SERVICES

IT IS FURTHER ORDERED that Corporate Defendants and Defendant Colombana, their agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any product, service, plan, or program, are permanently restrained and enjoined from misrepresenting, or Assisting Others in misrepresenting, expressly or by implication:

A.    any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

B.    that any Person is affiliated with, endorsed or approved by, or otherwise

connected to any other Person; government entity; public, non-profit, or other non-commercial program; or any other program;

C.   the nature, expertise, position, or job title of any Person who provides any product, service, plan, or program;

D.   that any Person providing a testimonial has purchased, received, or used the product, service, plan, or program;

E.   that the experience represented in a testimonial of the product, service, plan, or program represents the Person's actual experience resulting from the use of the product, service, plan, or program under the circumstances depicted in the advertisement;

F.   its total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics; or

G.   any other fact material to consumers concerning any good or service.

## V.  PROHIBITION AGAINST UNSUBSTANTIATED CLAIMS

IT IS FURTHER ORDERED that Corporate Defendants and Defendant Colombana, their agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any product or service, are permanently restrained and enjoined from making any representation, expressly or by implication, about the benefits, performance, or efficacy of any product or service, unless the representation is non-misleading, and, at the time such representation is made, Corporate and Individual Defendants possess and rely upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

1  //

2  //

## VI. MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.  Judgment in the amount of Eight Million One Hundred and Thirty-Three Thousand Eight Hundred and Eleven Dollars ($8,133,811) is entered in favor of the FTC against Defendant Colombana as equitable monetary relief. Of this amount, One Million Seven Hundred and Sixteen Thousand Two Hundred and Twenty-Five Dollars ($1,716,225) is joint and several with Relief Defendant; and Eight Million One Hundred and Thirty-Three Thousand Eight Hundred and Eleven Dollars ($8,133,811) is joint and several with Corporate Defendants, defendant Avitia-Pena (Doc. 120), and defendant Tuan Duong's judgment in the related case of *FTC v. Duong, et al.* (a/k/a *FTC v. CD Capital Investments, LLC*), No. 8:14-cv-01033-JLS-RNB (Doc. 203 in Case No. 8-14-cv-01033). Defendant Colombana is ordered to pay the FTC $8,133,811 immediately upon the entry of this Order.

B.  Judgment in the amount of Ten Million Seven Hundred and Eight Thousand, Two Hundred and Six Dollars ($10,708,206) is entered in favor of the FTC against Corporate Defendants as equitable monetary relief. Of this amount, One Million Seven Hundred and Sixteen Thousand Two Hundred and Twenty-Five Dollars ($1,716,225) is joint and several with Relief Defendant; Eight Million One Hundred and Thirty-Three Thousand Eight Hundred and Eleven Dollars ($8,133,811) is joint and several with Defendant Colombana; and Ten Million Seven Hundred and Eight Thousand, Two Hundred and Six Dollars ($10,708,206) is joint and several between each Corporate Defendant, defendant Avitia-Pena (Doc. 120), and

defendant Tuan Duong's judgment in the related case of *FTC v. Duong, et al.* (a/k/a *FTC v. CD Capital Investments, LLC*), No. 8:14-cv-01033-JLS-RNB (Doc. 203 in Case No. 8-14-cv-01033). Pursuant to the above, Corporate Defendants are ordered to pay the FTC $10,708,206 immediately upon the entry of this Order.

C. Judgment in the amount of One Million Seven Hundred and Sixteen Thousand Two Hundred and Twenty-Five Dollars ($1,716,225) is entered in favor of the FTC against Relief Defendant as equitable monetary relief. This amount is joint and several with Defendant Colombana, Corporate Defendants, defendant Avitia-Pena (Doc. 120), and defendant Tuan Duong's judgment in the related case of *FTC v. Duong, et al.* (a/k/a *FTC v. CD Capital Investments, LLC*), No. 8:14-cv-010033-JLS-RNB (Doc. 203 in Case No. 8-14-cv-01033). Relief Defendant is ordered to pay the FTC $1,716,225 immediately upon the entry of this Order.

## VII. ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A. Defaulting Defendants acknowledge that their Taxpayer Identification Numbers (Employer Identification Numbers), which Defaulting Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

B. All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission

may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defaulting Defendants' actions alleged in the operative Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defaulting Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

C.     The asset freeze as to Defaulting Defendants existing pursuant to the Court's April 2, 2019 Superseding Second Preliminary Injunction is dissolved.

## VIII.  CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Corporate Defendants and Defendant Colombana, their agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly:

A.     failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, each Corporate Defendant and Individual Defendant must provide it, in the form prescribed by the Commission, within 14 days.

B.     disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that each Corporate Defendant and Individual Defendant or any of their co-defendants obtained prior to entry of this Order in connection with the marketing and sale of debt relief services; and

C.     failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## IX.  RECEIVERSHIP TERMINATION

IT IS FURTHER ORDERED that the Receiver must complete all duties within 120 days after entry of this Order, but any party or the Receiver may request that the Court extend that Receiver's term for good cause.

## X.  ORDER ACKNOWLEDGMENT

IT IS FURTHER ORDERED that Defaulting Defendants obtain acknowledgments of receipt of this Order:

A.     within 7 days of entry of this Order, each Defaulting Defendant must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     for 20 years after entry of this Order, each Defaulting Defendant must deliver a copy of this Order to:

1.     all principals, officers, directors, and LLC managers and members;

2.     all employees having managerial responsibilities for promoting or offering for sale any good or service, and all agents and representatives who participate in promoting or offering for sale any good or service; and

3.     any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

1   C.   In any other business, such as one in which Individual Defendant is an

2        employee without any ownership or control, Individual Defendant must

3        deliver a copy of this Order to all principals and managers of the business

4        before participating in promoting or offering for sale any good or service;

5   D.   From each individual or entity to which any of the Defaulting Defendants

6        delivered a copy of this Order, the Defaulting Defendant must obtain, within

7        30 days, a signed and dated acknowledgment of receipt of this Order.

8                    **XI.  COMPLIANCE REPORTING**

9        IT IS FURTHER ORDERED that Corporate Defendants and Defendant

10  Colombana each make timely submissions to the Commission:

11  A.   One year after entry of this Order, each Corporate Defendant and Defendant

12       Colombana must submit a compliance report, sworn under penalty of

13       perjury:

14       1.   Corporate Defendants and Defendant Colombana must:  (a) identify

15            the primary physical, postal, and email address and telephone number,

16            as designated points of contact, which representatives of the

17            Commission may use to communicate with Corporate Defendants and

18            Defendant Colombana; (b) identify all of Corporate Defendants' and

19            Defendant Colombana's businesses by all of their names, telephone

20            numbers, and physical, postal, email, and Internet addresses; (c)

21            describe the activities of each business, including the goods and

22            services offered, the means of advertising, marketing, and sales, and

23            the involvement of any co-defendants in this case (which Corporate

24            Defendants and Defendant Colombana must describe if they know or

25            should know due to their own involvement); (d) describe in detail

26            whether and how Corporate Defendants or Defendant Colombana is in

27            compliance with each Section of this Order; and (e) provide a copy of

28

each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.    Additionally, Corporate Defendants and Defendant Colombana must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all places of business; (b) identify all business activities, including any business for which Corporate Defendants or Defendant Colombana perform services whether as an employee or otherwise and any entity in which they have any ownership interest; and (c) describe in detail Corporate Defendants and Defendant Colombana's involvement in each such business, including role, responsibilities, participation, and any ownership.

B.    For 20 years after entry of this Order, each Corporate Defendant and Defendant Colombana must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Corporate Defendants and Defendant Colombana must report any change in: (a) any designated point of contact; or (b) the structure of the entity, including any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, Corporate Defendants and Defendant Colombana must report any change in: (a) name, including a d/b/a or fictitious name, or address; or (b) title or role in any business activity, including any business for which the Corporate Defendants or Defendant Colombana perform services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest,

16

1     and identify the name, physical address, and any Internet address of

2     the business or entity.

3 C.   Each Corporate Defendant and Defendant Colombana must submit to the

4     Commission notice of the filing of any bankruptcy petition, insolvency

5     proceeding, or similar proceeding by or against it within 14 days of its filing.

6 D.   Any submission to the Commission required by this Order to be sworn under

7     penalty of perjury must be true and accurate and comply with 28 U.S.C. §

8     1746, such as by concluding:  "I declare under penalty of perjury under the

9     laws of the United States of America that the foregoing is true and correct.

10     Executed on:  _____" and supplying the date, signatory's full name, title (if

11     applicable), and signature.

12 E.   Unless otherwise directed by a Commission representative in writing, all

13     submissions to the Commission pursuant to this Order must be emailed to

14     DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service)

15     to:  Associate Director for Enforcement, Bureau of Consumer Protection,

16     Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington,

17     DC  20580.  The subject line must begin:  FTC v. Impetus, x140035.

## XII.  RECORDKEEPING

IT IS FURTHER ORDERED that Corporate Defendants and Defendant Colombana must create certain records for 20 years after entry of the Order and retain each such record for 5 years.  Specifically, for any business that Corporate Defendants or Defendant Colombana, individually or collectively with any other co-defendants in this case, are a majority owner or control directly or indirectly, they must create and retain the following records:

A.   accounting records showing the revenues from all goods or services sold;

B.   Personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's:  name; addresses; telephone

numbers; job title or position; dates of service; and (if applicable) the reason
for termination;

C. records of all consumer complaints and refund requests, whether received
directly or indirectly, such as through a third party, and any response;

D. all records necessary to demonstrate full compliance with each provision of
this Order, including all submissions to the Commission; and

E. a copy of each unique advertisement or other marketing material.

## XIII. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defaulting
Defendants' compliance with this Order:

A. Within 14 days of receipt of a written request from a representative of the
Commission, Defaulting Defendants must:  submit additional compliance
reports or other requested information, which must be sworn under penalty
of perjury; appear for depositions; and produce documents for inspection
and copying.  The Commission is also authorized to obtain discovery,
without further leave of court, using any of the procedures prescribed by
Federal Rules of Civil Procedure 29, 30 (including telephonic depositions),
31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, the Commission is authorized to
communicate directly with Defaulting Defendants.  Defaulting Defendants
must permit representatives of the Commission to interview any employee
or other Person affiliated with Defaulting Defendants who has agreed to
such an interview.  The Person interviewed may have counsel present.

C. The Commission may use all other lawful means, including posing, through
its representatives as consumers, suppliers, or other individuals or entities, to
Defaulting Defendants or any individual or entity affiliated with Defaulting
Defendants, without the necessity of identification or prior notice.  Nothing

in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.    Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Defendant Colombana, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XIV.  RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED on February 27, 2020.**

_____
**THE HONORABLE JOSEPHINE L. STATON**
**UNITED STATES DISTRICT JUDGE**