DAVID R. ZARO (BAR NO. 124334)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Court-Appointed Receiver
KRISTA L. FREITAG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>vs.<br><br>IMPETUS ENTERPRISE, INC., a California corporation, also d/b/a Aiding Student Relief, Aiding Students & Teachers, Aidnest, Avec Staffing, and National Education Student and Teacher; FIG TREE & CO., LLC, a California limited liability company, also d/b/a Aiding Student Relief, Aiding Students & Teacher, and Aiding Students & Teachers; TUAN DINH DUONG, a/k/a Thomas Duong, a/k/a Thomas Dinh, individually and as an officer of IMPETUS ENTERPRISE, INC.; BRENDA AVITIA-PENA, individually and as an officer of IMPETUS ENTERPRISE, INC. and FIG TREE & CO., LLC; and BRIAN COLOMBANA d/b/a FUTERO, individually and as an officer of FIG TREE & CO., LLC,<br><br>    Defendants,<br><br>NOEL SOLUTIONS, LLC, a Wyoming limited liability company,<br>    Relief Defendant. | Case No. 8:18-cv-01987-JLS-KES<br><br>**NOTICE OF MOTION AND MOTION TO CONCLUDE RECEIVERSHIP AND FOR ORDER: (1) APPROVING FINAL ACCOUNTING AND REPORT; (2) APPROVING DISPOSITION/TRANSFER OF BOOKS AND RECORDS; AND (3) DISCHARGING RECEIVER; RECEIVER'S FINAL ACCOUNTING AND REPORT**<br><br>Date:   October 23, 2020<br>Time:  10:30 a.m.<br>Ctrm:  10A<br>Judge:  Hon. Josephine L. Staton |

**TO THE HONORABLE JOSEPHINE L. STATON, JUDGE OF THE UNITED STATES DISTRICT COURT, AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on October 23, 2020, at 10:30 a.m. in Courtroom 10A of the above-entitled Court, located at 411 West 4th Street, Room 1053 Santa Ana, CA 92701-4516, Krista L. Freitag ("Receiver"), the Court-appointed permanent receiver for Impetus Enterprise, Inc. ("Impetus") and Fig Tree & Co., LLC ("Fig Tree"), each of their subsidiaries, affiliates, successors and assigns, and any other entity that has conducted any business related to Defendants' student debt relief enterprise, including receipt of assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant (collectively the "Receivership Entities" or individually, a "Receivership Entity"), will and hereby does move the Court to conclude the receivership and for an order, (1) approving her final accounting and report; (2) approving disposition/transfer of funds, books and records; and (3) discharging the Receiver ("Motion"). The Motion and relevant pleadings are available at the Receiver's website, http://www.ethreeadvisors.com/ftc-case-docs/ftc-v-impetus-et-al/.

**Procedural Requirements:** If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 411 West 4th Street, Room 1053 Santa Ana, CA 92701-4516, and serve the same on the undersigned not later than 21 calendar days prior to the hearing.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice. This Motion is made following the conference of counsel pursuant to L.R. 7-3.

Dated: June 26, 2020

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:     */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Court-appointed
Receiver KRISTA L. FREITAG

# **TABLE OF CONTENTS**

**Page**

I. RECEIVER'S FINAL ACCOUNTING AND REPORT ................................. 6
    A. Background, Business Assessment and Business Records .................. 6
    B. Asset Disposition and Recovery ........................................................... 9
    C. Receiver Reporting and Communications ............................................ 9
    D. Receivership Accounting ...................................................................... 9

II. CLOSING MATTERS ....................................................................................10
    A. Payment of Outstanding Fees and Costs .............................................10
    B. Disposition/Transfer of Records ..........................................................11
    C. Discharge of Receiver ..........................................................................11

III. ARGUMENT ..................................................................................................12
    A. Broad Equitable Powers of the Court ..................................................12
    B. Conclusion of Receivership and Discharge of Receiver .....................13

IV. CONCLUSION ...............................................................................................14

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

899103.01/SD

Case 8:18-cv-01987-JLS-KES   Document 136   Filed 06/26/20   Page 4 of 14   Page ID #:3797

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.*,
  205 F.3d 1107 (9th Cir. 1999) ................................................................................ 12

*First Empire Bank-New York v. FDIC*,
  572 F.2d 1361 (9th Cir. 1978) ................................................................................ 13

*SEC v. Capital Consultants, LLC*,
  397 F.3d 733 (9th Cir. 2005) .................................................................................. 12

*SEC v. Elliot*,
  953 F.2d 1560 (11th Cir. 1992) .............................................................................. 12

*SEC v. Hardy*,
  803 F.2d 1034 (9th Cir. 1986) .......................................................................... 12, 13

*SEC v. Wencke*,
  622 F.2d 1363 (9th Cir. 1980) ................................................................................ 12

# MEMORANDUM OF POINTS AND AUTHORITIES

The Receiver has completed her management and monetization of recoverable assets of the receivership estate, has determined no significant recovery of additional assets is likely, and therefore seeks approval of a plan to transfer receivership estate funds and records in her possession. Furthermore, the Federal Trade Commission ("Commission") has resolved its claims against Defendants Calderon, Capital Sun Investments, Duong, and Avitia-Pena. The Commission also obtained entry of a default judgment against Defendant Entities Impetus, Fig Tree, and Relief Defendant Noel Solutions and individual Defendant Brian Colombana. As such, the Receiver is prepared to close the receivership.

Unfortunately, the assets of the Receivership Entities had minimal value in relation to the number of prospective claimants (estimated to be tens of thousands based on Customer Relationship Management software databases obtained by the Receiver). Therefore, pursuing a claims and distribution process for all consumers, former personnel, or other creditors is not feasible.

The Receiver has recovered a total of $345,870.53. For the time period of November 13, 2018 to June 30, 2019, the Receiver's fees and costs approved and paid on an interim basis, including forensic imaging costs, amount to $75,912.44. Fees and costs for the Receiver's counsel approved and paid on an interim basis during the same time period amount to $37,573.70. After paying the $75,912.44 and $37,573.70 of receivership administrative fees and costs, plus other ordinary course expenses totaling $4,687.32, the receivership estate's cash balance is currently $227,697.07. The Receiver and her counsel will file their Final Fee Applications shortly hereafter.

The relief sought herein will allow the Receiver to take the remaining steps necessary to conclude the receivership, which includes transferring the remaining receivership estate funds (after payment of final fees and expenses proposed herein)

to the Commission and transferring the receivership estate records to the Internal Revenue Service, with the express consent of the Commission's counsel.

## I. RECEIVER'S FINAL ACCOUNTING AND REPORT

### A. Background, Business Assessment and Business Records

The Court appointed the Receiver on temporary basis on November 13, 2018, and on a permanent basis on November 29, 2018. Dkt. Nos. 23, 38. The Receiver's bond was filed with the Court on December 6, 2018. Dkt. No. 40. Then on April 2, 2019, this Court entered a Superseding Second Preliminary Injunction with Asset Freeze, Appointment of Receiver, and Other Equitable Relief, which modified the PI Order in certain respects. Dkt. No 68. The orders are referred to hereinafter collectively as the "PI Orders."

Pursuant to the PI Orders and law governing federal equity receivers, the Receiver was charged with, among other things, assuming control over the Receivership Entities and their assets ("Receivership Assets"). Promptly upon her appointment, the Receiver assumed control over the leased premises located at 1651 E. 4th Street, Santa Ana, CA 92701 (the "Office Premises"), and served the TRO on and retrieved mail from the virtual office locations identified in the TRO (18100 Von Karman Ave. and 2252 Chambers Rd.). The Receiver made significant efforts to identify other physical locations (numerous former and virtual addresses were discovered and contacts associated with same thus served), but the one other physical operating location discovered in the United States had been vacated by the time of discovery.

With regard to the Office Premises, the Receiver took physical control, changed the locks, served/notified the landlord through property management, served/notified key vendors, and otherwise worked to ensure no entry into the

premises. Such physical records were moved to secure storage, and the suite was emptied and turned over to the landlord.[1]

In addition to the Commission providing notice of the asset freeze, the Receiver also promptly notified each bank and credit card payment processor identified as having an account associated with the Receivership Entities. In such notices, the Receiver demanded turnover of the account, immediate cancellation of any debit or credit cards, identification/freeze of any safe deposit box, account balance and reserve information, and account records. As previously mentioned, the Receiver recovered approximately $346,000, which primarily included bank account balances and payment processor reserve balances.

The operational appearance of the Office Premises was that of a call center, with a few offices and cubicles located throughout. Through the interviews of employees on site, the Receiver learned that the student loan debt relief services were marketed through mailers, call leads were purchased and that ultimate relief results may not be known (e.g., the company may have to contact the client or Department of Education directly to obtain results). Call scripts and other similar documents were located, including a document entitled "Mandatory Enrollment Fees". Based upon (a) this document, which states that "First payment needs to be scheduled within 5-10 days of enrollment date", (b) bank records showing six figure monthly receipts, (c) sample customer data pulled from the CRM software showing payment requirements in the contract and payments reflected in the CRM system, and (d) other information gleaned from interviews discussed below, it appeared very likely that payments were demanded and/or received prior to services being rendered and/or results delivered.

Accordingly, and with no cash available to fund any level of operations (less than $15 in the Studora-related operating accounts at takeover), the Receiver

---

[1] The Studora contract employees were given several opportunities to retrieve personal belongings before the space was emptied.

determined the business could not be operated at all, let alone operated legally and profitably, and therefore suspended operations.

The Receiver obtained control over website hosting, domain registration and email service provider accounts of the Receivership Entities. Due to the fact the PI Orders did not provide specific reference to the websites and the accounts were held under various names, a considerable effort was undertaken to gain access. Once access was granted, the Receiver was able to redirect traffic from those websites to the receivership website. This effectively shut down the Receivership Entities web presence and disabled the ongoing marketing of the Receivership Entities' debt relief services. It also served to notify the previous customers of the Receivership Entities of the Receiver's appointment and provided basic information to assist them in their search for debt relief.

Additionally, as the email accounts controlled by GoDaddy.com appeared to hold very little information, the Receiver continued to search for any other email service providers. As part of that process, the Receiver noted that four domains used Microsoft as the provider of their email services and accordingly issued notice of the PI Order to them. Shortly thereafter, the Receiver was contacted by outside counsel for Microsoft requesting that the Receiver seek a specific order from the Court directing them to turn over access. After various discussions and negotiations, Microsoft agreed to freeze and preserve the accounts, notify the owners of the accounts and then, absent an objection within five days, turn over control to the accounts. That access was gained on Friday January 11, 2019, and the Receiver thereafter secured the data in the One Drive accounts and over 240 email accounts related to four domains.

The Receiver also obtained access to CRM software platforms and Intuit/QuickBooks online accounts. Unfortunately, the data in QuickBooks accounts was incomplete, although some information was obtained. Additional possible

vendors were also noticed, however substantive or current information from those vendors was limited.

### B. Asset Disposition and Recovery

Other than the funds recovered as described herein, no additional Receivership Entity funds or assets appear available for recovery, including real property. As noted above, the Receiver was able to recover approximately $346,000, which included limited recoverable value of the personal property from the Office Premises – which for the most part, consisted of CPU's, computer monitors, cubicles and other miscellaneous office furniture, fixtures and equipment.

### C. Receiver Reporting and Communications

At the beginning of the receivership, the Receiver established a dedicated web page, which has provided case information and updates for access by consumers, former personnel and creditors. The internet address for the webpage is http://www.ethreeadvisors.com/ftc-case-docs/ftc-v-impetus-et-al/. The Receiver also maintained a dedicated email address and telephone line for consumer inquiries. The website also includes a platform for consumers to sign-up for direct updates from the Receiver – such sign-up currently totals 403 people.

### D. Receivership Accounting

As of June 22, 2020, the receivership bank accounts contain a total balance of $227,697. The following is a summary of the cash activity in the receivership estate bank account and/or Receiver-controlled bank accounts for the period from November 16, 2018 through June 22, 2020:

| RECEIVERSHIP ESTATE CASH ACTIVITY: | |
|---|---:|
| Capital Sun Investments – Chase Bank Recovery | $6,783 |
| Premiere Capital Investments – Chase Bank Recovery | $13 |
| Fig Tree – Chase Bank Recovery | $2 |
| Impetus Enterprise – Wells Fargo Bank Recovery | $27,565 |

| | |
|---|---:|
| Electronic Merchant Systems Reserve Recovery | $143,938 |
| Choice Merchant Solutions Reserve Recovery | $124,905 |
| Madera Merchant Reserve Recovery | $31,039 |
| Payliance Merchant Reserve Recovery | $10,558 |
| FF&E Proceeds (net of moving costs) | $1,000 |
| Interest Income | $68 |
| Receiver Fees Paid | ($75,912) |
| Receiver Legal Fees Paid | ($37,574) |
| Operating Expenses Paid | ($4,688) |
| **Cash Balance as of June 22, 2020** | **$227,697** |

## II.  CLOSING MATTERS

### A.  Payment of Outstanding Fees and Costs

As noted above, the receivership estate currently holds $227,697. As reflected in the Final Fee Applications of the Receiver and her counsel, which will be filed shortly hereafter, since July 1, 2019, the Receiver has incurred fees and costs totaling $3,775.05 and her counsel has incurred fees and costs totaling $8,617.85. The work done by the Receiver and her counsel is described in detail in the Final Fee Applications, which seek approval of these fees and costs, as well as the 20% of fees voluntarily held back from prior interim fee applications of the Receiver and her counsel, $16,660.35 and $8,937.36, respectively. Finally, the Receiver requests authority to pay herself a total of up to $3,600.00 to complete tasks remaining to close the receivership (including estimated costs to transfer records) and her counsel a total of up to $3,000 for legal tasks associated with the Receiver's remaining work.[2]

---

[2]  These estimates of fees for remaining work assume that this Motion will be unopposed and approved by the Court without a hearing. If either turns out not to be the case, adjustments to the estimates of fees and costs for remaining work (and a corresponding adjustment to the estimated funds remaining in the receivership estate when all work has been completed) may need to be made.

The remaining Receiver tasks and legal tasks are described in the Final Fee Applications.

Assuming the Final Fee Applications are approved, the funds remaining in the receivership will be approximately $183,000. As noted above, due the large number of potential claimants, the lack of an accounting showing their claims/losses, and the limited amount of funds, it is simply not feasible to conduct a claims and distribution process for all potential claimants. Therefore, the Commission has requested and the Receiver has agreed, subject to Court approval, that the remaining funds will be turned over to the Commission. Accordingly, the Receiver requests authority to turn the funds remaining in the receivership estate, after payment of Court-approved fees and costs, to the Commission.

### B. Disposition/Transfer of Records

As noted above, the Commission has requested, and the Receiver has agreed, subject to Court approval, to have the records relating to the Receivership Entities that are in the Receiver's possession turned over to the Internal Revenue Service ("IRS"). The Receiver, therefore, requests authority to proceed with turnover of these records to the IRS. If for any reason the IRS declines to accept the records, or any portion thereof, the Receiver requests authority to make the materials available to the Commission, or if the Commission declines to accept them, to destroy them.

### C. Discharge of Receiver

The Receiver has taken all appropriate steps to preserve and recover value from the limited assets of the Receivership Entities. The Receivership Entities' assets were marshalled, protected, and monetized to the extent possible. Unfortunately, despite significant efforts to obtain records which could help identify prospective assets, the value of such assets was limited relative to the prospective claimant pool. The Commission has also resolved its litigation. As such, it is appropriate for the Receiver to ask the Court to enter an order discharging her.

## III.   ARGUMENT

### A.   Broad Equitable Powers of the Court

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). As the appointment of a receiver is authorized by the broad equitable powers of the Court, any distribution of assets must also be done equitably and fairly. *See SEC v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005). As the Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions. A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

Id. (citations omitted); *see also Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve the[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors."). Accordingly, the

Court has broad equitable powers and discretion in the administration of the receivership estate.

### B. Conclusion of Receivership and Discharge of Receiver

Federal District Courts presiding over federal equity receiverships have broad power and wide discretion in the supervision of the same. *SEC v. Hardy*, 803 F.2d 1034, 1037-38 (9th Cir. 1986). Their power and discretion includes the authority to "make rules which are practicable as well as equitable." *Id.* at 1039 (quoting *First Empire Bank-New York v. FDIC*, 572 F.2d 1361, 1368 (9th Cir. 1978)). In this case, the Court's supervision of the receivership is guided by these same rules.

The Receiver has diligently carried out her Court-ordered duties, including assuming control of enterprises and their records (such records have or will be transferred as presented herein), marshalling assets to the extent possible, and providing reports to the Court. As there is no further benefit to be gained from maintaining this receivership, with no ability to legally or profitably operate and with insufficient funds to effectuate a claims and distribution process for all potential claimants, the Receiver requests that she be discharged and the case be closed.

The Receiver, therefore, requests an order discharging and fully releasing her of: (i) all duties under the PI Orders and subsequent orders of the Court, and (ii) any and all claims and liabilities associated with the case and the Defendants. The Receiver asks the Court to approve transfer of the remaining funds (after payment of the final expenses presented herewith) to the Commission and transfer of the remaining records to the Internal Revenue Service. In addition, the Receiver asks the Court to approve and ratify all actions taken by the Receiver and her professionals in the performance of the Receiver's Court-ordered duties. The Receiver further requests the Court retain exclusive jurisdiction over any and all new actions or claims related to the receivership or work done by the Receiver and her professionals to carry out the Receiver's Court-ordered duties.

## IV. CONCLUSION

For the foregoing reasons, the Receiver respectfully requests the Court grant the Motion and issue the proposed order discharging the Receiver submitted herewith.

Dated: June 26, 2020

By: *[signature]*
KRISTA L. FREITAG
Court-appointed Receiver

Dated: June 26, 2020

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Receiver
KRISTA L. FREITAG